No. 21-50792

# In the United States Court of Appeals for the Fifth Circuit

WHOLE WOMAN'S HEALTH, on behalf of itself, its staff, physicians, nurses, and patients; ALAMO CITY SURGERY CENTER, P.L.L.C., on behalf of itself, its staff, physicians, nurses, and patients, doing business as Alamo Women's Reproductive Services; BROOKSIDE WOMEN'S MEDICAL CENTER, P.A., on behalf of itself, its staff, physicians, nurses, and patients, doing business as Brookside Women's Health Center and Austin Women's Health Center; HOUSTON WOMEN'S CLINIC, on behalf of itself, its staff, physicians, nurses, and patients; HOUSTON WOMEN'S REPRODUCTIVE SERVICES, on behalf of itself, its staff, physicians, nurses, and patients; PLANNED PARENTHOOD CENTER FOR CHOICE, on behalf of itself, its staff, physicians, nurses, and patients; PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, on behalf of itself, its staff, physicians, nurses, and patients; PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, on behalf of itself, its staff, physicians, nurses, and patients; SOUTHWESTERN WOMEN'S SURGERY CENTER, on behalf of itself, its staff, physicians, nurses, and patients; WHOLE WOMEN'S HEALTH ALLIANCE, on behalf of itself, its staff, physicians, nurses, and patients; MEDICAL DOCTOR ALLISON GILBERT, on behalf of herself and her patients; MEDICAL DOCTOR BHAVIK KUMAR, on behalf of himself and his patients; THE AFIYA CENTER, on behalf of itself and its staff; FRONTERA FUND, on behalf of itself and its staff; FUND TEXAS CHOICE, on behalf of itself and its staff; JANE'S DUE PROCESS, on behalf of itself and its staff; LILITH FUND, INCORPORATED, on behalf of itself and its staff; NORTH TEXAS EQUAL ACCESS FUND, on behalf of itself and its staff; REVEREND ERIKA FORBES; REVEREND DANIEL KANTER; MARVA SADLER,

*Plaintiffs-Appellees*

v.

JUDGE AUSTIN REEVE JACKSON; PENNY CLARKSTON; MARK LEE DICKSON; STEPHEN BRINT CARLTON; KATHERINE A. THOMAS; CECILE ERWIN YOUNG; ALLISON VORDENBAUMEN BENZ; KEN PAXTON,

*Defendants-Appellants*

_____

On Appeal from the U.S. District Court for the
Western District of Texas, Austin Division
No. 1:21-cv-00616-RP
The Honorable Robert Pitman, District Judge

_____

AMICUS BRIEF OF THE STATES OF LOUISIANA, ALABAMA, ALASKA,
ARIZONA, ARKANSAS, IDAHO, INDIANA, KANSAS, KENTUCKY,
MISSISSIPPI, MISSOURI, MONTANA, OKLAHOMA, SOUTH CAROLINA,
SOUTH DAKOTA, UTAH, AND WEST VIRGINIA IN SUPPORT OF
DEFENDANTS- APPELLANTS

_____

Jeff Landry
  ATTORNEY GENERAL
Elizabeth B. Murrill*
  Solicitor General
  *Counsel of Record
Josiah Kollmeyer
  Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
MurrillE@ag.louisiana.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iv

INTEREST OF *AMICI CURIAE* ..............................................................1

ARGUMENT ...............................................................................................1

    I.   PLAINTIFFS LACK STANDING TO BRING THIS SUIT AGAINST
          DEFENDANTS. ....................................................................................1

    II.  PLAINTIFFS' SUIT DOES NOT FALL WITHIN THE *EX PARTE YOUNG*
          EXCEPTION TO SOVEREIGN IMMUNITY. ...............................................7

CONCLUSION ..........................................................................................15

CERTIFICATE OF SERVICE .................................................................167

CERTIFICATE OF COMPLIANCE .........................................................17

# TABLE OF AUTHORITIES

## Cases

*Allen v. DeBello,*
   861 F.3d 433 (3d Cir. 2017) ................................................................ 3

*Allen v. Wright,*
   468 U.S. 737 (1984) ........................................................................ 2

*Bauer v. Texas,*
   341 F.3d 352 (5th Cir. 2003) ........................................................ 2, 3

*California v. Texas,*
   141 S. Ct. 2104 (2021) ...................................................................... 2

*Ch. Clerk of Chickasaw Cty. v. Wallace,*
   646 F.2d 151 (5th Cir. 1981) ............................................................ 3

*Children's Healthcare is a Legal Duty, Inc. v. Deters,*
   92 F.3d 1412 (6th Cir. 1996) .......................................................... 14

*Church v. Missouri,*
   913 F.3d 736 (8th Cir. 2019) .......................................................... 14

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) .......................................................... 14

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .................................................................... 1, 6

*Collins v. Yellen,*
   141 S. Ct. 1761 (2021) ......................................................... 2, 5, 13

*Commonwealth of Massachusetts v. Mellon,*
   262 U.S. 447 (1923) .................................................................. 13, 14

*Cooper v. Rapp,*
   702 F. App'x 328 (6th Cir. 2017) ...................................................... 2

*Ex parte Young,*
   209 U.S. 123 (1908) ................................................................ passim

*Fitts v. McGhee,*
   172 U.S. 516 (1899) .......................................................................... 7

*Frew ex rel. Frew v. Hawkins,*
    540 U.S. 431 (2004) ............................................................. 13

*Grant v. Johnson,*
    15 F.3d 146 (9th Cir. 1994) ................................................... 3

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997) ............................................................. 11

*In re Gee,*
    941 F.3d 153 (5th Cir. 2019) ................................................. 5

*In re Justices of Sup. Ct. of P.R.,*
    695 F.2d 17 (1st Cir. 1982) ................................................... 3

*Kentucky v. Graham,*
    473 U.S. 159 (1985) .............................................................. 7

*Liberty Mut. Ins. Co v. Adcock,*
    412 S.W.3d 492 (Tex. 2013) ................................................. 5

*Marbury v. Madison,*
    5 U.S. 137 (1803) ................................................................. 9

*McBurney v. Cuccinelli,*
    616 F.3d 393 (4th Cir. 2010) ............................................... 14

*Mendez v. Heller,*
    530 F.2d 457 (2d Cir. 1976) ............................................ 2, 3

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ............................................... 14

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ............................................................... 8

*Stone v. Powell,*
    428 U.S. 465 (1976) .............................................................. 6

*United States v. Sineneng-Smith,*
    140 S. Ct. 1575 (2020) ........................................................ 13

*Va. Office for Prot. & Advocacy v. Stewart,*
    563 U.S. 247 (2011) ........................................................ 12, 13

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ...................................................................... 6

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ...................................................................... 6

*Whole Woman's Health v. Jackson*,
    2021 WL 4128951 (5th Cir. 2021) ............................................... 2

## Other Authorities

Tex. Const. art. II, § I ......................................................................... 9

Tex. Const. art. IV .............................................................................. 9

Tex. Health & Safety Code § 171.044 ............................................ 10

Tex. Health & Safety Code § 171.207(a) ......................................... 5

Tex. R. Civ. P. 99(a) ......................................................................... 10

U.S. Const. art. II, § 3 ....................................................................... 9

## Rules

Fed. R. App. P. 29(a)(5) .................................................................. 18

Fed. R. App. P. 32(a)(6) .................................................................. 18

Fed. R. App. P. 32(a)(7)(B)(iii) ....................................................... 18

Fed. R. App. R. 32(a)(5) .................................................................. 18

## INTEREST OF *AMICI CURIAE*

*Amici* are the States of Louisiana, Alabama, Alaska, Arizona, Arkansas, Idaho, Indiana, Kansas, Kentucky, Mississippi, Missouri, Montana, Oklahoma, South Carolina, South Dakota, Utah, and West Virginia.  *Amici* have a strong interest in protecting their officers from improper lawsuits.  As explained below, this suit should have been dismissed by the District Court for lack of jurisdiction. The defendant officers of the State of Texas are not empowered to enforce S.B. 8, and they are not responsible for any harm which the plaintiffs might suffer; thus the plaintiffs lack standing to sue them. Those defendants should also be protected by sovereign immunity. *Amici* States have an interest in ensuring that their own officers do not face similar improper lawsuits in the future, whether in the abortion context or in any other context.

## ARGUMENT

## I.    Plaintiffs lack standing to bring this suit against Defendants.

A plaintiff invoking federal jurisdiction must show that his alleged injury is caused by the defendant he has chosen to sue and redressable by an order against that defendant. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "[T]he relevant inquiry is whether the plaintiffs'

injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). A plaintiff does not have standing to challenge legal provisions that the defendant cannot enforce. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021).

This Court has already recognized the "obvious jurisdictional defects" in Plaintiffs' suit, *see Whole Woman's Health v. Jackson*, 2021 WL 4128951, at *6 (5th Cir. 2021) (per curiam) ("*Jackson I*"), and there is no reason to depart from its prior conclusion.

Plaintiffs do not have standing to sue a state judge such as Judge Jackson, or a court clerk such as Ms. Clarkston, simply because a private party might file a lawsuit in their court. As this Circuit and other Circuits have concluded, there is no case or controversy between a judge and a plaintiff challenging the constitutionality of a state law merely because the judge may apply that law. *See Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003); *Cooper v. Rapp*, 702 F. App'x 328, 333 (6th Cir. 2017); *Mendez v. Heller*, 530 F.2d 457, 461 (2d Cir. 1976). "The requirement of a justiciable controversy is not satisfied where a judge acts in his

adjudicatory capacity." *Bauer*, 341 F.3d at 359. A judge's posture is "not in any sense the posture of an adversary to the contentions made on either side of the case," *Mendez*, 530 F.2d at 459. The same principle applies to a state court's clerk for the same reasons. *See Ch. Clerk of Chickasaw Cty. v. Wallace*, 646 F.2d 151, 160 (5th Cir. 1981). Clerks are even less compelling defendants–their role is simply to *accept* a legal filing, not to adjudicate the case or otherwise determine whether the filing is appropriate as long as the filing fees are paid. Indeed, clerks accept many lawsuits for filing that are later found wanting.

Allowing Plaintiffs in this case to sue Judge Jackson and the clerk of court Clarkston would run counter to all of these precedents. Courts are, by definition, empowered to apply the law to cases or controversies brought before them. This does not make judges or court staff appropriate defendants when a plaintiff seeks to challenge enforcement of a law. For similar reasons, courts have consistently rejected attempts to name judges who apply challenged statutes as defendants in § 1983 cases. *See Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017); *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir. 1994); *In re Justices of Sup. Ct. of P.R.*, 695 F.2d 17, 22 (1st Cir. 1982).

Plaintiffs' theory, which was adopted by the district court, is that judges and clerks can be sued because they will "exert their official power to open the actions in the docket and issue citations compelling those sued under S.B. 8 to respond to the lawsuit" and "exert the compulsive power of the state to force those sued under S.B. 8 to comply with the statute through an injunction and other penalties." ROA.898. But this amounts to an argument that judges may become adverse to plaintiffs because they will follow basic procedural rules in a case. But Plaintiffs have not distinguished this conduct from that called upon a judge or clerk in any other case. This argument constitutes a radical expansion of standing were it adopted. And it would open the door for numerous judges and court staff to be sued on the basis that they *might* apply a challenged law and follow neutral procedural rules that apply to all cases. Neither the judiciary nor judicial administrators should be exposed to such a vulnerability.

Plaintiffs also cannot establish standing to sue the officers of the Texas Medical Board, Board of Nursing, Board of Pharmacy, and Health and Human Services Commission, or the State's Attorney General, because those Defendants cannot enforce S.B. 8 and do not cause any

injury that might result from its private enforcement. For standing purposes, plaintiffs must not merely show an injury, but an injury *traceable* to the conduct of the defendants. *Collins*, 141 S. Ct. at 1779.

Plaintiffs contended below that these Defendants have authority to enforce collateral penalties against plaintiffs for violating S.B. 8, such as by seeking civil penalties against violators or threatening violators' medical licenses. See ROA.756–57. But the text of the statute itself undermines this argument. The Texas Legislature spoke clearly in S.B. 8: "Notwithstanding . . . any other law," S.B. 8 "shall be enforced exclusively through the private civil actions described in Section 171.208." S.B. 8 § 3 (Tex. 2021) (creating Tex. Health & Safety Code § 171.207(a)). Like federal law, Texas law does not allow an agency to exercise authority not provided to it or to circumvent a clear legislative command leaving enforcement of a particular law to some other actor. *See, e.g.*, *Liberty Mut. Ins. Co v. Adcock*, 412 S.W.3d 492, 494 (Tex. 2013). Thus, it would be illegal for any of the Defendants to attempt to enforce the law in their official capacity.

And in any event, the "theoretical possibilit[y]" of disciplinary action is not an actual or imminent injury-in-fact. *In re Gee*, 941 F.3d 153,

164 (5th Cir. 2019) (per curiam); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (observing "[a]llegations of possible future injury" are not enough to demonstrate standing). Rather, the "threatened injury must be certainly impending," *Clapper*, 568 U.S. at 409 (quotation omitted), and Plaintiffs have failed to show that any enforcement action on the part of the Defendants is "certainly impending."

Plaintiffs may complain that the structure of the statute leaves them with no state official to sue in order to challenge this law. But the absence of a party with standing to sue "is not a reason to find standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982). Nor does this leave Plaintiffs open to suits across the State with no hope of redress for a constitutional injury. They can raise their constitutional arguments as a defense in an action brought under S.B. 8 in state court. State court may not be Plaintiffs' preferred forum, but state courts are permitted to consider federal constitutional questions. *Stone v. Powell*, 428 U.S. 465, 494 n.35 (1976) ("State courts, like federal courts, have a constitutional obligation to safeguard personal liberties and to uphold federal law.").

This Court should not create wide-ranging exceptions to Article III standing requirements to accommodate Plaintiffs' suit.

## II.    Plaintiffs' suit does not fall within the *Ex Parte Young* exception to sovereign immunity.

Even if Plaintiffs had standing, they cannot sue the governmental Defendants unless the claim fits within the *Ex parte Young* exception to sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [state government] entity."). For a plaintiff to properly invoke *Ex parte Young*, 209 U.S. 123 (1908), the state official sued must have "some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157. Plaintiffs cannot show that necessary connection.

As the Supreme Court has explained, "[t]here is a wide difference between a suit against [state officials]…to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute." *Fitts v. McGhee*, 172 U.S. 516, 529–30 (1899). The *Ex parte Young* exception authorizes

lawsuits only against a state officer who is violating or intends to violate federal law; that is what "strips" the officer of his sovereign authority and allows him to be sued as a rogue individual rather than as a component of a sovereign entity. *See Ex parte Young*, 209 U.S. at 159–60; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984) ("[A]n official who acts unconstitutionally is 'stripped of his official or representative character'" (emphasis added) (quoting *Ex parte Young*, 209 U.S. at 160).

Plaintiffs' claims against Ms. Clarkston and Judge Jackson demonstrate that they are attempting to do what *Ex parte Young* said they may not: "make the state a party," 209 U.S. at 157, or more precisely, the *entire* State's judiciary. Plaintiffs urge a federal court to enjoin *every* non-federal judge and clerk in Texas—the entire Texas judiciary and its administrative arm—to prevent the filing or consideration of private-enforcement suits under S.B. 8.

Plaintiffs' claims against Judge Jackson and Ms. Clarkston, even as individual state judicial officers, cannot fall within the *Ex parte Young* exception because neither of those defendants has the necessary "connection with the enforcement of the [challenged] act." *Id.* at 157. Under the federal constitution, it is axiomatic that "the province and duty

of the judicial department [is] to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Enforcement of the law is the province of the Executive Department. U.S. Const. art. II, § 3. The Texas Constitution functions the same way. *See* Tex. Const. art. II, § I; *see generally* Tex. Const. art. IV. Indeed, *Ex parte Young* itself forecloses Plaintiffs' theory:

> [T]he right to enjoin an individual, even though a state official, from commencing suits . . . does not include the power to restrain a court from acting in any case brought before it, either of a civil or criminal nature. . . . [A]n injunction against a state court would be a violation of the whole scheme of our government.

209 U.S. at 163.

Plaintiffs' insistence to the contrary—that court clerks and judges "enforce" S.B. 8—fails for many of the same reasons that their standing arguments do not support jurisdiction. Plaintiffs already— unsuccessfully—argued to the Supreme Court that, as a clerk, Ms. Clarkston is "connected to S.B. 8's private-enforcement mechanism" because she "will docket S.B. 8 petitions for enforcement and issue summonses compelling those sued to appear on pain of default judgment." Plaintiffs' Emergency Application to Justice Alito for Writ of

Injunction at 21, *Whole Woman Health, et al. v. Jackson, et al.*, ___ U.S.
___ (2021) (No. 21A24).

Plaintiffs insist that Judge Jackson "enforces" S.B. 8 because he
will oversee enforcement actions and "[a]ward[] S.B. 8's mandatory
penalties." ROA.874. These allegedly unconstitutional actions assume
the outcome of a hypothetical case and, in any event, are wholly
dependent on initial actions by a private party. Ms. Clarkston has no
control over whether someone chooses to file an S.B. 8 enforcement
petition in her county. And issuing a citation comes only after a private
party both chooses to file an enforcement action and "request[s]" that
citation be issued. Tex. R. Civ. P. 99(a). And of course, Judge Jackson has
no say over whether someone chooses to file suit in his district or even
whether that case is assigned to him.

The mere act of receiving, docketing, or hearing a case cannot strip
Judge Jackson or Ms. Clarkston of their sovereign immunity because,
even under Plaintiffs' theory, not every S.B. 8 enforcement suit violates
the Constitution. For instance, S.B. 8 and its private cause of action apply
to late-term abortions already prohibited by Texas law—a prohibition
Plaintiffs cannot dispute is constitutional. *See* Tex. Health & Safety Code

§ 171.044. And it is the responsibility of the litigant—not the court clerk—to ensure that his court filings respect the constitutional rights of an opposing party. The clerk does nothing illegal by accepting a court filing that seeks to enforce a statute that may be found unconstitutional in some (or even all) applications, as Plaintiffs allege here. Nor is Judge Jackson breaking laws by simply presiding over a lawsuit between private litigants—even if the lawsuit is brought under an allegedly unconstitutional statute.

Plaintiffs' lawsuit is also problematic because it attempts to force Judge Jackson and Ms. Clarkston to be the class representatives for every non-federal judge and clerk in Texas. Simply put, Plaintiffs are— asking federal courts to commandeer the entire Texas judiciary. But when a suit "implicates special sovereignty interests," the *Ex parte Young* exception does not apply. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997). By seeking relief against classes made up of the entire Texas judiciary, Plaintiffs seek relief that "is close to the functional equivalent" of suing the Texas judiciary. *Id.* at 282. "This is especially troubling when coupled with the far-reaching and invasive relief"

Plaintiffs seek. *Id.* Plaintiffs cannot use the mechanism of a class action to bring a lawsuit otherwise barred by sovereign immunity.

Plaintiffs' claims against the state agency Defendants also fail, because those Defendants do not enforce S.B. 8 within the meaning of *Ex parte Young. Ex parte Young* "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation . . . ." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). Because an *Ex parte Young* injunction "commands a state official to . . . refrain from violating federal law," it cannot issue if the state official does not enforce the law being challenged. *Id.*; *Ex parte Young,* 209 U.S. at 157. If the defendant does not enforce the challenged state law, then the plaintiff "is merely making him a party as a representative of the state, and thereby attempting to make the state a party," which sovereign immunity forbids. *Ex parte Young,* 209 U.S. at 157

Under the text of S.B. 8 itself, the Defendant-agencies lack state law authority to enforce the law, whether directly or indirectly. Even

cases taking a broad view of the *Ex parte Young* exception recognize that it applies to "a state official who enforces [an unconstitutional state] law," not all state officials. *Stewart*, 563 U.S. at 254*; see also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (observing the exception applies to "state officials acting in violation of federal law"). Because the state agency Defendants are not acting at all, the *Ex parte Young* fiction has no applicability. A plaintiff should not be allowed to sue in federal court to stop state officials from doing what they were already *not* doing.

Allowing Plaintiffs to sue Defendants who do not enforce S.B. 8 would upend basic principles of judicial review. "The party who invokes the power [of judicial review] must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement . . . ." *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). If relief is warranted, "the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding." *Id.*; *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1585–86 (2020) (Thomas, J., concurring); *cf. Collins*, 141 S. Ct. at 1779.

13

In this case, however, Plaintiffs' alleged injuries flow from the existence of the law and its potential use by unidentified private parties, not any enforcement by the state agency Defendants. As a result, the Court cannot enjoin "the execution of the statute," much less "the acts of [any] official," because none of the Defendants execute S.B. 8. *Mellon*, 262 U.S. at 488. In substance, Plaintiffs ask this Court to strike down S.B. 8 "on the ground that [it is] unconstitutional." *Id.* "To do so would be, not to decide a judicial controversy, but to assume a position of authority over the governmental acts of [a sovereign State], an authority which plainly [federal courts] do not possess." *Id.* at 488–89.

This Circuit has considered these issues in great detail over the years. *See, e.g.*, *City of Austin v. Paxton*, 943 F.3d 993, 997–1003 (5th Cir. 2019); *Okpalobi v. Foster*, 244 F.3d 405, 411–24 (5th Cir. 2001) (en banc) (plurality op.). So have other courts of appeals. *See, e.g.*, *Church v. Missouri*, 913 F.3d 736, 747–48 (8th Cir. 2019); *McBurney v. Cuccinelli*, 616 F.3d 393, 399–402 (4th Cir. 2010); *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414–18 (6th Cir. 1996). Suits can overcome sovereign immunity specifically if "the state official actually has the authority to enforce the challenged law." *Paxton*, 943 F.3d at 998.

That standard is not met here. Plaintiffs attempt to undermine these precedents with the instant suit, and failure to dismiss the suit was error.

## CONCLUSION

This Court should reverse the district court's denial of Defendants' motions to dismiss, and it should direct the district court to dismiss the case.

Respectfully submitted,

/s/ Elizabeth B. Murrill
Jeff Landry
  Attorney General
Elizabeth B. Murrill*
  Solicitor General
  *Counsel of Record*
Josiah Kollmeyer
  Assistant Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
 MurrillE@ag.louisiana.gov

*Counsel for Amici Curiae*

*Amici Curiae*

Jeff Landry
  Attorney General of Louisiana

Steve Marshall
  Attorney General of Alabama

Treg Taylor
  Attorney General of Alaska

Mark Brnovich
  Attorney General of Arizona

Leslie Rutledge
  Attorney General of Arkansas

Lawrence Wasden
  Attorney General of Idaho

Todd Rokita
  Attorney General of Indiana

Derek Schmidt
  Attorney General of Kansas

Daniel Cameron
  Attorney General of Kentucky

Lynn Fitch
  Attorney General of Mississippi

Eric Schmitt
  Attorney General of Missouri

Austin Knudsen
  Attorney General of Montana

John O'Connor
  Attorney General of Oklahoma

Alan Wilson
  Attorney General of South Carolina

Jason Ravnsborg
  Attorney General of South Dakota

Sean Reyes
  Attorney General of Utah

Patrick Morrisey
  Attorney General of West Virginia

## CERTIFICATE OF SERVICE

I certify that on October 20, 2021, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all registered counsel of record.

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because the brief contains 3,024 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook font.

  /s/   Elizabeth B. Murrill
Elizabeth B. Murrill
*Attorney for Amici Curiae*

Dated:    October 20, 2021