# Supreme Court of Texas

No. 22-0033

Whole Woman's Health, et al.,

*Plaintiffs-Appellees*,

v.

Judge Austin Reeve Jackson; Penny Clarkston; Mark Lee
Dickson; Stephen Brint Carlton; Katherine A. Thomas; Cecile
Erwin Young; Allison Vordenbaumen Benz; Ken Paxton,

*Defendants-Appellants*

On Certified Question from the
United States Court of Appeals for the Fifth Circuit

**Argued February 24, 2022**

JUSTICE BOYD delivered the opinion of the Court.

We address in this case a certified question from the United
States Court of Appeals for the Fifth Circuit,[1] asking whether Texas law
authorizes certain state officials to directly or indirectly enforce the
state's new abortion-restriction requirements. We conclude it does not.

---

[1] *See* TEX. CONST. art. V § 3-c(a) (granting this Court "jurisdiction to
answer questions of state law certified from a federal appellate court"); TEX. R.
APP. P. 58 (governing certified questions in this Court).

# I.
# Background

The Texas Legislature passed and the Governor signed Senate Bill 8—labeled the "Texas Heartbeat Act"—in 2021.[2] Section 3 of the Act added a new subchapter H to chapter 171 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE §§ 171.201–.212. Subchapter H prohibits physicians from knowingly "perform[ing]" or "induc[ing]" an abortion unless they first perform an "appropriate" test and do not detect a "fetal heartbeat." *Id.* §§ 171.203(a)–(c), .204(a).[3]

The plaintiffs in this case provide and fund abortions and support women who obtain them in Texas.[4] They filed suit in federal court

---

[2] Act of May 13, 2021, 87th Leg., R.S., ch. 62, 2021 Tex. Sess. Law Serv. 125 (West) (current version at TEX. HEALTH & SAFETY CODE §§ 171.005, .008, .012(a), .201–.212, 245.011(c); TEX. CIV. PRAC. & REM. CODE § 30.022; TEX. GOV'T CODE § 311.036); *see id.* § 1 ("This Act shall be known as the Texas Heartbeat Act.").

[3] The Act provides an exception if the physician "believes a medical emergency exists that prevents compliance." TEX. HEALTH & SAFETY CODE § 171.205(a). It also provides a number of affirmative defenses, one of which applies if the requirements will "impose an undue burden" on the woman or group of women seeking an abortion and the defendant has standing to assert the woman's or women's third-party rights. *Id.* § 171.209(b). That affirmative defense, however, "is not available if the United States Supreme Court overrules *Roe v. Wade*, 410 U.S. 113 (1973)[,] or *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)." *Id.* § 171.209(e).

[4] Specifically, the plaintiffs are Whole Woman's Health; Alamo City Surgery Center P.L.L.C., d/b/a Alamo Women's Reproductive Services; Brookside Women's Medical Center, P.A., d/b/a Brookside Women's Health Center and Austin Women's Health Center; Houston Women's Reproductive Services; Southwestern Women's Surgery Center; Whole Woman's Health Alliance; Allison Gilbert, M.D.; Reverend Erika Forbes; Reverend Daniel Kanter; Marva Sadler; Planned Parenthood Center for Choice; Planned Parenthood of Greater Texas Surgical Health Services; Planned Parenthood

requesting a declaration that the Act unconstitutionally restricts their rights and an injunction prohibiting the defendants from enforcing its requirements. The defendants include the executive director of the Texas Medical Board, the executive director of the Texas Board of Nursing, the executive director of the Texas Board of Pharmacy, and the executive commissioner of the Texas Health and Human Services Commission.

These state-agency executives moved to dismiss the lawsuit, asserting sovereign immunity, lack of standing, and other jurisdictional challenges. Pertinent to the Fifth Circuit's certified question, they argued that they are immune from the plaintiffs' federal suit because Texas law does not grant them any authority to enforce the Act's requirements.[5] The federal district court disagreed and denied their dismissal motions. The United States Supreme Court also disagreed, affirmed the denial of the state-agency executives' dismissal motions, and remanded the case to the Fifth Circuit.[6] At the state-agency

─────────────

South Texas Surgical Center; Bhavik Kumar, M.D.; Houston Women's Clinic; The Afiya Center; Frontera Fund; Fund Texas Choice; Jane's Due Process; Lilith Fund, Incorporated; and North Texas Equal Access Fund.

[5] Generally, the United States Constitution's Eleventh Amendment and the doctrine of sovereign immunity prohibit federal courts from exercising jurisdiction over claims against the states, but a narrow exception permits them to hear claims for prospective relief against state officials who have some connection with the enforcement of a state law that is alleged to violate federal law. *See Ex parte Young*, 209 U.S. 123, 157 (1908).

[6] *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 539 (2021). The Supreme Court agreed to decide the case without waiting on the Fifth Circuit's decision. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 415, 415 (2021) (granting certiorari before judgment). Although the Supreme Court affirmed

executives' request, the Fifth Circuit then certified the following question to us:

> Whether Texas law authorizes the Attorney General,[7] [the] Texas Medical Board, the Texas Board of Nursing, the Texas Board of Pharmacy, or the Texas Health and Human Services Commission, directly or indirectly, to take disciplinary or adverse action of any sort against individuals or entities that violate the Texas Heartbeat Act, given the enforcement authority granted by various provisions of the Texas Occupations Code, the Texas Administrative Code, and the Texas Health and Safety Code and given the restrictions on public enforcement in sections 171.005, 171.207, and 171.208(a) of the Texas Health and Safety Code.

*Whole Woman's Health*, 23 F.4th at 389.[8]

---

the district court's denial of the state-agency executives' dismissal motions, it partially reversed the district court's order, holding that the court lacked jurisdiction over—and thus should have dismissed—the plaintiffs' claims against other defendants, including a state district judge, a state district court clerk, the Texas attorney general, and a private individual who allegedly intended to file suit to enforce the Act's requirements. *See Whole Woman's Health*, 142 S. Ct. at 539.

[7] The Fifth Circuit panel acknowledged that the Supreme Court held that Texas law does not grant the state's attorney general authority to enforce the Act and dismissed the claims against the attorney general, and it further acknowledged that our answer regarding the attorney general's authority "will have no impact on the present litigation." *Whole Woman's Health*, 23 F.4th 380, 388 n.13 (5th Cir. 2022). Nevertheless, the panel "welcome[d]" this Court's answer regarding the attorney general's enforcement authority. *Id.*

[8] The plaintiffs objected to certification, arguing that the Supreme Court decided the issue in their favor and that the Fifth Circuit's only option was to remand the case to the district court. *Id.* at 383. A split Fifth Circuit panel disagreed, concluding that the Supreme Court "did not conclusively determine the scope of the officials' state law duties, if any, under S[enate] B[ill] 8," that "the Supreme Court ordered remand in light of [the defendants'] explicit notice that [they] would seek certification from the Fifth Circuit," and

We accepted the certified question and, like the Supreme Court, expedited briefing and oral argument. We conclude that Texas law does not authorize the state-agency executives to enforce the Act's requirements, either directly or indirectly.

## II.
## Direct Enforcement Authority

We begin with the question of whether Texas law authorizes the state-agency executives to "directly" enforce the Act's requirements. Section 171.208 creates a private civil action to enforce the Act's requirements:

> (a)     Any person, other than an officer or employee of a state or local governmental entity in this state, may bring a civil action against any person who:
>
> (1) performs or induces an abortion in violation of this subchapter;
>
> (2) knowingly engages in conduct that aids or abets the performance or inducement of an abortion, including paying for or reimbursing the costs of an abortion through insurance or otherwise, if

---

that this Court's "decision interpreting state law will be controlling." *Id.* at 384. The plaintiffs then asked the Supreme Court to order the Fifth Circuit to remand the case to the district court without certifying the question to this Court. The Supreme Court denied that relief, *In re Whole Woman's Health*, 142 S. Ct. 701 (2022), and we accepted the certified question. We limit our answer to the certified question and do not consider or address the propriety of the Fifth Circuit's decision to certify it, the effect of our answer, or the merits of the underlying claims. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("In answering certified questions, we are limited to answering only the questions before us."); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 349 (Tex. 1990) ("This is a very limited procedural device; we answer only the questions certified and nothing more.").

the abortion is performed or induced in violation of this subchapter, regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of this subchapter; or

(3) intends to engage in the conduct described by Subdivision (1) or (2).

(b)    If a claimant prevails in an action brought under this section, the court shall award:

(1) injunctive relief sufficient to prevent the defendant from violating this subchapter or engaging in acts that aid or abet violations of this subchapter;

(2) statutory damages in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter, and for each abortion performed or induced in violation of this subchapter that the defendant aided or abetted; and

(3) costs and attorney's fees.

Tex. Health & Safety Code § 171.208(a)–(b).

Two subsections of section 171.208 unambiguously confirm that the state-agency executives cannot bring a civil action under that section to enforce the Act's requirements. First, subsection (a) provides that the civil action it authorizes may be brought by "any person, *other than an officer or employee of a state or local governmental entity in this state.*"

*Id.* § 171.208(a) (emphasis added).[9] And second, subsection (h) provides that neither "this state," any "state official," nor any "district or county attorney" may intervene as a party in a civil action brought under section 171.208. *Id.* § 171.208(h).

These subsections unequivocally provide that (1) the Act's testing and no-heartbeat requirements may be enforced by a private civil action under section 171.208, and (2) no state official may bring or participate as a party in any such action. As the plaintiffs themselves concede, it is thus "clear that public officials cannot enforce the Act *directly* by bringing civil enforcement actions created therein."

## III.
## Indirect Enforcement Authority

The plaintiffs contend, however, that other Texas laws authorize the state-agency executives to *indirectly* enforce the Act's requirements through "administrative and public civil enforcement actions" against Texas physicians, nurses, pharmacists, and other professional licensees. For example, the Texas Medical Practice Act requires the Texas Medical Board to take disciplinary action against a licensed physician (or deny a license to an applicant) who violates any state or federal law in connection with the practice of medicine.[10] Other Texas laws grant

---

[9] Subsection (j) also excludes from "any person" a "person who impregnated the abortion patient through an act of rape, sexual assault, incest," or certain other criminal conduct. TEX. HEALTH & SAFETY CODE § 171.208(j).

[10] *See* TEX. OCC. CODE §§ 164.001(a)–(b), .051(a)(3), (6), .052(a)(5), .053(a)(1).

similar general license-enforcement authority and obligations to the executives of the Texas Nursing Board,[11] the Texas Board of Pharmacy,[12] and the Texas Health and Human Services Commission.[13]

The plaintiffs contend these laws grant the state-agency executives authority to indirectly enforce the Heartbeat Act by sanctioning and disciplining professional licensees who violate it. In particular, the plaintiffs note that the Medical Practice Act and the Medical Board's rules expressly authorize and require disciplinary action against a licensee who performs, procures, induces, aids, or abets a "criminal" or illegal abortion,[14] including an abortion prohibited by chapter 171.[15]

We agree that these laws grant the state agencies and their executives broad authority to enforce other state laws—including abortion-restriction laws—through the professional-disciplinary process, at least unless the other laws provide otherwise. But we conclude that the Heartbeat Act expressly provides otherwise. Our analysis in reaching that conclusion involves three main considerations. First, we simply apply the Act's emphatic, unambiguous, and repeated

---

[11] *See id.* §§ 301.101(b), .452(b)(1), (10), .453(a); 22 TEX. ADMIN. CODE § 217.11.

[12] *See* TEX. OCC. CODE §§ 553.003(b)(3), 565.001(a), .002(a), 566.001(1); 22 TEX. ADMIN. CODE § 281.7(a).

[13] TEX. HEALTH & SAFETY CODE §§ 243.011(a), 245.013; 25 TEX. ADMIN. CODE § 135.4(*l*).

[14] *See* TEX. OCC. CODE § 164.052(a)(16), (17)–(21); 22 TEX. ADMIN. CODE § 190.14(9).

[15] *See* TEX. OCC. CODE § 164.055(a); 25 TEX. ADMIN. CODE § 139.60(*l*).

provisions declaring that the civil action section 171.208 provides is the "exclusive" method for enforcing the Act's requirements. Next, we address the plaintiffs' contention that a "savings clause" in section 171.207(b) preserves the state-agency executives' general power to indirectly enforce the Act's requirements through disciplinary actions. And finally, we consider the plaintiffs' argument that the canon against surplusage precludes our construction of the exclusive-enforcement provisions because it leaves one clause in section 171.207(a) without any apparent independent meaning.

## A. The exclusive-enforcement provisions

As explained, section 171.208 creates a private civil action to enforce the Act's requirements and also prohibits any state official from bringing or participating as a party in any such action. *See* TEX. HEALTH & SAFETY CODE § 171.208(a), (h). But the Act does much more than that.

First, section 171.207(a) broadly and emphatically declares that the section 171.208 civil action is the *only* method by which the Act's testing and no-heartbeat requirements may be enforced:

> Notwithstanding Section 171.005 or any other law, the *requirements* of this subchapter [H] *shall be enforced exclusively through the private civil actions* described in Section 171.208. *No enforcement of this subchapter*, and no enforcement of Chapters 19 and 22, Penal Code, in response to violations of this subchapter, *may be taken or threatened by this state*, a political subdivision, a district or county attorney, or *an executive or administrative officer or employee of this state* or a political subdivision against any person, except as provided in Section 171.208.

*Id.* § 171.207(a) (emphases added). Unlike subsections 171.208(a) and (h), this subsection does not merely provide that only private persons

may bring a section 171.208 civil action and that state officers and employees may not bring or participate as a party in such an action. It adds to those limitations by providing that a section 171.208 civil action is the *exclusive* method to enforce subchapter H's requirements.

Another provision of Senate Bill 8—specifically, section 6—solidifies that limitation. Before Senate Bill 8, section 171.005—one of chapter 171's "general provisions" located within subchapter A—provided simply that the Texas Department of State Health Services "shall enforce this chapter [171]." Section 6 of Senate Bill 8 amended section 171.005 to provide that the Texas Health and Human Services Commission, rather than the Department of State Health Services, "shall enforce this chapter [171] *except for Subchapter H, which shall be enforced exclusively through the private civil enforcement actions described by Section 171.208 and may not be enforced by the commission.*" *Id.* § 171.005 (emphasis added). Like the exclusive-enforcement provision in section 171.207(a), section 171.005 unambiguously confirms that the *only* way to enforce subchapter H is by filing a civil action under section 171.208.

The plaintiffs contend that these provisions merely make a section 171.208 civil action the "exclusive means for *directly* enforcing Sub-chapter H" and do not preclude *indirect* enforcement through the "enforcement of other laws in response to a violation of Sub-chapter H." [Emphasis added.] But this argument trips over its own logic. If a section 171.208 civil action constitutes the method for "directly" enforcing the Act's requirements and other actions (like disciplinary proceedings) constitute methods for "indirectly" enforcing the Act's requirements,

then by definition, the section 171.208 civil action is the only method for "direct" enforcement. And if that were true, there would be no need to include any provision (much less two separate provisions) stating that the requirements "shall be [directly] enforced exclusively through" a section 171.208 civil action.

But more importantly, neither of the exclusive-enforcement provisions uses the word "directly" or implies any distinction between direct or indirect enforcement. Instead, they both broadly declare that subchapter H "shall be enforced exclusively through" a section 171.208 civil action. And section 171.207(a) goes even further, making a section 171.208 civil action the exclusive means for enforcing not just subchapter H, but its "requirements." The plaintiffs do not dispute that a disciplinary action based on a licensee's performance of an abortion without first performing an "appropriate" test that does not detect a "fetal heartbeat" would enforce the Act's "requirements."

We cannot rewrite the statute by adding the word "directly" or replacing the word "requirements," *see In re G.X.H.*, 627 S.W.3d 288, 300 (Tex. 2021), at least in the absence of "extraordinary circumstances" and "unmistakable" textual guidance requiring that result, *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999). And we find no such guidance here. By unambiguously declaring a section 171.208 civil action to be the exclusive means to enforce the Act's requirements, these provisions deprive the state-agency executives of any authority they might otherwise have to enforce the requirements through a disciplinary action.

## B. The savings clause

The plaintiffs contend that section 171.207(b)—the Act's so-called "savings clause"—confirms that the Act does not prohibit enforcement through state-agency disciplinary proceedings. Section 171.207(b) provides, in relevant part, that section 171.207(a) "may not be construed to . . . limit the enforceability of any other laws *that regulate or prohibit abortion*." TEX. HEALTH & SAFETY CODE § 171.207(b)(3) (emphasis added). The plaintiffs contend this savings clause preserves the state-agency executives' authority to enforce the Act's requirements because the laws that authorize them to take disciplinary actions against licensees who perform "criminal abortions" or abortions that violate some other law[16] are themselves laws that "regulate or prohibit abortion."

Senate Bill 8 does not define the terms "regulate" or "prohibit," but the parties agree that, under their common, ordinary meanings, to "regulate" means to "control (an activity or process) esp[ecially] through the implementation of rules," and to "prohibit" means to "forbid by law" or to "prevent, preclude, or severely hinder." *Regulate* & *Prohibit*, BLACK'S LAW DICTIONARY (11th ed. 2019). But the savings clause applies not just to "other laws that regulate or prohibit," but to "other laws that regulate or prohibit *abortion*," and the parties dispute whether the laws that empower the state-agency executives to discipline licensees for violations of other laws that regulate or prohibit abortions are themselves laws that regulate or prohibit abortions.

---

[16] *See, e.g.*, TEX. OCC. CODE §§ 164.052(a)(16), (17)–(21), .055(a).

We conclude that they are not. In reaching this conclusion, we find guidance in the Supreme Court's recognition that, "in order to regulate" a particular subject, "a law must not just have an impact on" the subject, "but must be specifically directed toward" that subject. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50 (1987) (addressing whether a law "regulates insurance" for purposes of ERISA preemption).[17] For example, under this "common-sense view of the word 'regulates,'" *id.*, laws that are "directed specifically at the insurance industry" and are "applicable only to insurance contracts" may be laws that "regulate insurance." *Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 945 (9th Cir. 1998). But common-law doctrines "not specifically directed toward the insurance industry," *Phx. Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 561 (4th Cir. 1994), and "general laws of contract interpretation, even when directed at the insurance industry," *Sec. Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1188 (9th Cir. 1998), are not.

In addition to giving proper recognition to the stated object of the regulation or prohibition ("abortion"), this understanding respects the distinction between laws that "regulate" or "prohibit" particular conduct and laws that more broadly "relate to" that conduct. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385 (1992) (holding that party's argument that statute only preempts states "from prescribing rates, routes, or services . . . simply reads the words 'relating to' out of the statute" and that "[h]ad the statute been designed to pre-empt state law

---

[17] *See also Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341–42 (2003); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 365–66 (2002); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740 (1985).

in such a limited fashion, it would have forbidden the States to '*regulate* rates, routes, and services'"); *see also Fredericksburg Care Co. v. Perez*, 461 S.W.3d 513, 528 (Tex. 2015) (holding statute that governs agreements to arbitrate healthcare-liability claims between patients and healthcare providers was not a statute enacted for the purpose of "regulating the business of insurance").

Thus, to "regulate or prohibit abortion," a law must do more than relate to or have an impact on abortions; it must be specifically directed at abortions and must substantively control, forbid, preclude, or hinder them. We agree with the state-agency executives that the general laws that procedurally authorize them to discipline licensees who violate Texas's abortion-restriction laws do not themselves substantively "regulate or prohibit abortion." Most of these laws make no mention of abortion at all, but instead merely authorize or require the defendants to enforce *other* laws, rules, or standards that regulate or prohibit specific conduct.[18] Even sections 164.052 and 164.055 of the Occupations Code, which expressly refer to abortions, do not themselves specifically regulate or prohibit abortions. *See* Tex. Occ. Code §§ 164.052(a)(16), (18)–(21), .055(a). They are specifically directed at the Medical Board, not at abortions, and require the Board to "take an appropriate disciplinary action" against a physician who violates *other* laws that do regulate or prohibit abortion. *Id.*

---

[18] *See* Tex. Occ. Code §§ 164.001(a)–(b), .051(a)(3), (6), .052(a)(5), .053(a)(1), 165.101(a), 301.101(b), .452(b)(1), (10), .453(a), 553.003(b)(3), 565.001(a), .002(a), 566.001(1); Tex. Health & Safety Code §§ 243.011(a), 245.013–.017; Tex. Gov't Code § 402.023(b); 22 Tex. Admin. Code §§ 217.11, 281.7(a); 25 Tex. Admin. Code § 135.4(*l*).

One of the "other laws" to which section 164.055 refers is chapter 171 of the Health and Safety Code, of which subchapter H (which includes the testing and no-heartbeat requirements) is a part. *See id.* § 164.055(a). Based on this reference, the plaintiffs assert that section 164.055 is an "*other* law that regulates or prohibits abortion" by allowing indirect enforcement through disciplinary actions, and thus falls within the savings clause. *See* TEX. HEALTH & SAFETY CODE § 171.207(b)(3). But this assertion fails to consider subsection 171.207(a)'s emphatic declaration that the Act's requirements "shall be enforced exclusively through" a section 171.208 civil action, "*[n]otwithstanding . . . any other law.*" *Id.* § 171.207(a) (emphasis added). This "notwithstanding" language confirms that the exclusive-enforcement provisions control over "any other law" that may conflict with its provisions. *See Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 695 (Tex. 2020).[19] So the fact that Senate Bill 8 did not amend section 164.055 to exclude subchapter H from that section's reference to chapter 171, as it did with section 171.005, is irrelevant. Under section 171.207(a), the Act's substantive timing and no-heartbeat requirements "shall be enforced exclusively through" a section 171.208 civil action "notwithstanding" the fact that section 164.055 procedurally authorizes the Medical Board to indirectly enforce chapter 171 through disciplinary actions.

To be sure, Texas has enacted many "other laws"—other than the Heartbeat Act—that "regulate or prohibit abortion." The savings clause

---

[19] *See also In re Fisher*, 433 S.W.3d 523, 533–34 (Tex. 2014); *In re Lee*, 411 S.W.3d 445, 454 (Tex. 2013); *Molinet v. Kimbrell*, 356 S.W.3d 407, 413 (Tex. 2011); *Bala v. Maxwell*, 909 S.W.2d 889, 892–93 (Tex. 1995).

ensures that the Act may not be construed to limit the enforcement of those "other laws," whether directly or indirectly through disciplinary actions. TEX. HEALTH & SAFETY CODE § 171.207(b)(3). But the Texas laws that procedurally authorize such indirect enforcement are not themselves laws that substantively "regulate or prohibit abortion," and—notwithstanding any other law—the Act's requirements may be enforced only though a section 171.208 civil action.

## C. The Penal Code clause and the surplusage canon

In addition to their reliance on the savings clause, the plaintiffs contend that a clause contained within section 171.207(a) demonstrates that the exclusive-enforcement provisions of that subsection and of section 171.005 are not as unambiguous as they seem. Specifically, the plaintiffs note that after subsection 171.207(a) states that the Act's requirements "shall be enforced exclusively" through a section 171.208 civil action, the next sentence states that "[n]o enforcement of this subchapter, *and no enforcement of Chapters 19 and 22, Penal Code, in response to violations of this subchapter*, may be taken or threatened by" any government actor. *Id.* § 171.207(a) (emphasis added). The parties agree that the emphasized language (which we will refer to as "the Penal Code clause") expressly prohibits criminal prosecutions of persons who perform an abortion without meeting the Act's testing and no-heartbeat requirements, even if that abortion would otherwise constitute a homicide or assault against an "unborn child" under Penal Code chapters 19 and 22.

The plaintiffs argue that the Penal Code clause expressly prohibits prosecutors from *indirectly* enforcing the Act's requirements

through a criminal prosecution. And this, they say, is important for two reasons. First, as Justice Gorsuch observed in the Supreme Court's plurality opinion in this case, the Penal Code clause "suggests that the Texas Legislature knew how to prohibit collateral enforcement mechanisms when it adopted S[enate] B[ill] 8, and understood that it was necessary to do so." *Whole Woman's Health*, 142 S. Ct. at 536 n.4. And second, if the exclusive-enforcement provisions *broadly* prohibit any indirect enforcement of the Act's requirements, there would be no need to *specifically* prohibit indirect enforcement through criminal prosecutions. *See id.* ("To read S[enate] B[ill] 8 as barring any collateral enforcement mechanisms without a specific exclusion would thus threaten to render this statutory language superfluous."). To read the Act as broadly prohibiting all indirect enforcement actions, they contend, would render the Penal Code clause mere surplusage, such that the Act would bear the exact same meaning if the clause were omitted completely.

We do not agree that construing the exclusive-enforcement provisions to prohibit enforcement of the Act's requirements by any method other than a section 171.208 civil action renders the Penal Code clause surplusage. As explained, the savings clause permits enforcement of "other laws that restrict or prohibit abortion" despite the Act's exclusive-enforcement provisions. And unlike the laws that procedurally authorize the state-agency executives to pursue disciplinary actions against licensees based on violations of other laws that impose substantive restrictions and prohibitions, chapters 19 and 22 of the Penal Code themselves substantively prohibit certain abortions

and thus constitute laws that "restrict or prohibit abortion."[20] The Penal Code clause confirms that, although the Act is a civil statute, prosecutors cannot pursue criminal homicide or assault charges based on an abortion that violates the Act's requirements even though the savings clause would otherwise permit such prosecutions. It thus narrows the scope of the savings clause by barring criminal prosecutions under Chapters 19 and 22 that are based on and "in response to violations of" the Act's testing and no-heartbeat requirements. *Id.* § 171.207(a).

Moreover, even if the Penal Code clause did not perform this function and were mere surplusage, we disagree with the plaintiffs that such a redundancy would alter the clear terms of the exclusive-enforcement provisions. We have consistently and repeatedly acknowledged that courts "must give effect to all words of a statute and not treat any language as surplusage." *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 159 (Tex. 2021). And we have often expressed this surplusage canon in mandatory and inflexible terms,

---

[20] Chapters 19 and 22 of the Texas Penal Code make it a criminal offense to commit certain homicides or assaults against an individual. *See* TEX. PENAL CODE §§ 19.01–.05, 22.01–.11. An "individual" includes "an unborn child at every stage of gestation from fertilization until birth," and "death" includes, "for an individual who is an unborn child, the failure to be born alive." TEX. PENAL CODE § 1.07(a)(26), (49). So homicide under Chapter 19 includes causing an unborn child not to be born alive, and assault under Chapter 22 includes injuring an unborn child. Although these substantive prohibitions do not apply to the death or assault of an unborn child if the conduct is "a lawful medical procedure," *id.* §§ 19.06(2), 22.12(2), an abortion performed without meeting the Act's testing and no-heartbeat requirements is not a lawful medical procedure, TEX. HEALTH & SAFETY CODE § 171.204(a).

stating that courts "*may not* interpret a statute in a way that renders any part of it meaningless," *Randol Mill Pharmacy v. Miller*, 465 S.W.3d 612, 617 (Tex. 2015) (emphasis added), "*must not* interpret the statute in a manner that renders any part of [it] . . . superfluous," *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (emphasis added), and "*must* examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless," *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (emphasis added). We have even referred to the canon against surplusage as a "cardinal rule of statutory interpretation." *Waak v. Rodriguez*, 603 S.W.3d 103, 108 (Tex. 2020).

But we have also repeatedly recognized that, as useful as the surplusage canon may be, even it has its exceptions. We have explained, for example, that we must "*endeavor* to afford meaning to all of a statute's language so none is rendered surplusage," *In re Tex. Educ. Agency*, 619 S.W.3d 679, 688 (Tex. 2021) (emphasis added),[21] and must do so "[i]f possible," *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 134 (Tex. 2019),[22] "if reasonable and possible," *id.*, or "[w]hen possible," *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658,

---

[21] *See also In re Off. of Atty. Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) ("We must endeavor to read the statute contextually, giving effect to every word, clause, and sentence.").

[22] *See also Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000) ("[W]e give effect to all words of a statute, and, *if possible*, do not treat any statutory language as mere surplusage." (emphasis added)).

663 (Tex. 2010). And with similar caution, we have said that an "interpretation that gives each word meaning *is preferable* to one that renders one surplusage," *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 23–24 (Tex. 2015), and that we will not "*lightly* presume that the Legislature may have done a useless act," *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998) (emphasis added).

Here, it is impossible to give the Penal Code clause the full effect the plaintiffs propose without rendering other language in the Act superfluous or rewriting it altogether. If, as the plaintiffs assert, the Penal Code clause confirmed that prosecutors cannot indirectly enforce the Act's requirements through prosecutions but the state-agency executives could indirectly enforce the Act's requirements through professional-disciplinary actions, then it would not be true that the Act and its "requirements" "shall be enforced *exclusively* through the private civil enforcement actions described by Section 171.208." Tex. Health & Safety Code §§ 171.005, .207(a) (emphasis added). Unless we judicially rewrite those emphatic and unambiguous declarations, *they* would become surplusage under the plaintiffs' proposed construction of the Penal Code clause.

Like all canons of construction, the surplusage canon "must be applied with judgment and discretion, and with careful regard to context." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176–77 (2012) (emphasis omitted). And we cannot apply the canon when its application renders other statutory language surplusage. *See, e.g.*, *Microsoft Corp. v. I4I Ltd.*

*P'ship*, 564 U.S. 91, 106 (2011) (declining to rely on the surplusage canon because "no interpretation" of the statute "avoids excess language"); *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011) (explaining that the surplusage canon "applies only if verbosity and prolixity can be eliminated by giving the offending passage, or the remainder of the text, a competing interpretation"). Under such circumstances, application of the canon becomes impossible, and we will not rely on it because it cannot serve its purpose. *See Moskal v. United States*, 498 U.S. 103, 120 (1990) (Scalia, J., dissenting) (noting that the surplusage canon "is sound, but its limitation ('if possible') must be observed").

We are left, then, with deciding what to make of the Penal Code clause. Even if it did not carry the independent meaning we have described, we would agree with the state-agency executives that the most logical conclusion, and (more importantly) the one most true to *all* of the Act's language, is that the Legislature included the clause not to prohibit indirect enforcement that would be permitted in the clause's absence, but to emphasize and make it unmistakably clear that by prohibiting *all* enforcement methods other than a section 171.208 civil action, the Act *even* prohibits criminal prosecutions against those who commit homicide or assault against an unborn child.[23]

---

[23] *See Whole Woman's Health*, 142 S. Ct. at 541–42 (Thomas, J., dissenting in part) (concluding that the Penal Code clause provides a "'specific example' of withheld enforcement authority alongside the Act's 'general' proscription," to "'remove any doubt' that criminal prosecution is unavailable" and make the point "doubly sure" (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226–227 (2008), and *Barton v. Barr*, 590 U. S. —, —, 140 S. Ct. 1442, 1453 (2020))).

We have repeatedly recognized, when faced with legal language that appears repetitive or otherwise unnecessary, that drafters often include redundant language to illustrate or emphasize their intent. *See, e.g.*, *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 477 (Tex. 2016) (concluding that lease language "distinctly impose[d] responsibility" on the tenant for particular damage unless caused by the landlord, despite broad language imposing all responsibility on the tenant for damage not caused by the landlord, "for clarity, emphasis, or both"); *Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870, 873 (Tex. 2016) (concluding that a gas-lease provision stating that the royalty would be "free and clear of all production and post-production costs and expenses" must "be regarded as" either "emphasizing the cost-free nature of the gas royalty, or as surplusage," because "like any other royalty, the gas royalty does not share in production costs"); *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001) (concluding that the legislature "repeated itself" in the Texas Public Information Act "out of an abundance of caution, for emphasis, or both"). In short, as we have observed, "there are times when redundancies are precisely what the Legislature intended." *In re Est. of Nash*, 220 S.W.3d 914, 918 (Tex. 2007).

Reading all of subsection 171.207(a) together and within its statutory context, including section 171.005, we conclude that the surplusage canon simply cannot and does not undermine the exclusive-enforcement provisions' emphatic and unambiguous language. Instead of rendering the exclusive-enforcement provisions surplusage or judicially rewriting them in over-simplistic adherence to the typically useful surplusage canon, we conclude that the Act makes a section

171.208 civil action the "exclusive" method for enforcing the Act's requirements and prohibits any indirect-enforcement method.

## IV.
### Conclusion and Answer

Senate Bill 8 provides that its requirements may be enforced by a private civil action, that no state official may bring or participate as a party in any such action, that such an action is the exclusive means to enforce the requirements, and that these restrictions apply notwithstanding any other law. Based on these provisions, we conclude that Texas law does not grant the state-agency executives named as defendants in this case any authority to enforce the Act's requirements, either directly or indirectly. We answer the Fifth Circuit's certified question No.

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** March 11, 2022